**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 8 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

FREDRICK J. LAURINO,

            Plaintiff-Appellant,

v.

KEITH O. TATE; KELLY G.
MCINTOSH; MICHAEL R. BERRY;
JEFFREY A. WEINMAN; STEVEN
HISER; CITY OF WICHITA;
WICHITA POLICE DEPARTMENT,

            Defendants-Appellees.

No. 99-3170

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## (D.C. No. 98-CV-1074-MLB)

---

Submitted on the briefs:

Thomas C. McDowell of McDowell & Edingfield, Wichita, Kansas, for
Plaintiff-Appellant.

Gary E. Rebenstorf, City Attorney, and  Blaise Plummer, Assistant City Attorney,
Wichita, Kansas, for Defendants-Appellees Tate, McIntosh, Berry, Weinman and
Hiser, and Edward L. Keeley of McDonald, Tinker, Skaer, Quinn & Herrington,
P.A., Wichita, Kansas, for Defendant-Appellee City of Wichita.

---

Before  **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

**BRORBY** , Circuit Judge.

Plaintiff-appellant Fredrick J. Laurino appeals from the district court's order dismissing his claims brought against the defendants pursuant to 42 U.S.C. § 1983. Mr. Laurino's counsel also challenges Fed. R. Civ. P. 11 sanctions imposed against him as part of this appeal.[1] We affirm.

On July 21, 1995, Mr. Laurino was arrested for obstruction of legal process under a Wichita, Kansas municipal ordinance. Mr. Laurino was initially convicted in municipal court of the charge, but received a bench trial in state district court on March 13, 1996, at which time he was acquitted. On March 3, 1998, he brought this action pursuant to § 1983, seeking damages and injunctive and declaratory relief against the officers involved in his arrest, the City of Wichita, and its police department. His complaint asserted claims against the defendants for warrantless arrest without probable cause, unlawful deprivation of liberty, malicious prosecution, intentional interference with a business interest, and outrageous conduct. The district court denied Mr. Laurino's request for

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

injunctive and declaratory relief and dismissed each of his claims, except for the claim for malicious prosecution,[2] as barred by the statute of limitations.

The district court converted the motion to dismiss on the malicious prosecution claim to a summary judgment motion and ordered a briefing schedule. In its order setting the briefing schedule, the court noted with concern Mr. Laurino's statement in his brief in response to the City of Wichita's motion to dismiss that:

> there were inconsistent statements, perhaps even some statements rising to the level of perjury, between the officers' police reports and the officers' subsequent testimony under oath in the Sedgwick County District Court trial of Mr. Laurino in which he was acquitted. Thus, if the Plaintiff was tried in municipal court on stipulated facts and, if the Plaintiff is correct and the inconsistencies between the officers' reports and the officers' testimony rise to the level of "material, intentional misstatements of fact", Plaintiff's previous conviction in municipal court may have been "obtained by fraud, perjury or other corrupt means."

Appellant's App. at 56-57 (quoting Mr. Laurino's brief); see Appellees' Supp. App. at 40.

The district court admonished counsel that this was a "serious accusation," and reminded him of his duties under Fed. R. Civ. P. 11. Appellant's App. at 57. It instructed counsel that if he wished to pursue the contention involving fraud,

---

[2] The district court appears to have denied defendants' motion to dismiss the claim for malicious prosecution on statute of limitations grounds because the claim accrued at the time Mr. Laurino was acquitted and was arguably subject to a two-year statute of limitations.

perjury or corruption, it should be supported by affidavits or other evidence admissible in a summary judgment proceeding.     See id.

The defendants subsequently filed their motions for summary judgment within the deadline set by the district court.  Mr. Laurino did not respond.  When the court clerk contacted his counsel about the lack of response, counsel stated that Mr. Laurino had instructed him not to file a response, and to appeal instead. On March 4, 1999, the district court, finding this response unsatisfactory, entered an order requiring Mr. Laurino and his counsel to show cause why Rule 11 sanctions should not be imposed for their previous accusations of fraud, perjury or corruption against the officers.

The district court held a hearing on the order to show cause.  At the hearing, Mr. Laurino's attorney explained the factual basis for the claim of perjury, fraud or other corrupt means against Officer Tate.  He admitted, however, that he was unable to provide any evidence that the other officers named had committed acts of fraud, perjury or corruption.     See Appellant's App. at 218-20. Counsel explained that he "was making a broad sweeping statement and I may have overstepped my bounds."     Id. at 220.

The district court agreed.  It entered summary judgment against Mr. Laurino on the remaining claim and imposed Rule 11 sanctions against his attorney, ordering him to pay $825.00 based upon time expended by the counsel

for the officers, and $714.82 based upon time expended by counsel for the City of Wichita. The district court subsequently entered an order inviting defendants to file a motion for sanctions if they wished to have the sanctions paid to them. The defendants filed a joint motion for sanctions, and the district court entered an amended judgment awarding the sanctions to them.

I.

We consider first whether Mr. Laurino's claims were barred by the statute of limitations. We review de novo the district court's determination of this issue. See Sterlin v. Biomune Sys., 154 F.3d 1191, 1194 (10th Cir. 1998). The district court determined that Mr. Laurino's claims for warrantless arrest without probable cause, unlawful deprivation of liberty, intentional interference with a business interest, and outrageous conduct accrued on the day of his arrest and release from jail, July 21, 1995. It then borrowed and applied the two-year Kansas statute of limitations for injury to the rights of another. See Kan. Stat. Ann. § 60-513(a)(4); Wilson v. Garcia, 471 U.S. 261, 280 (1985). Under the district court's reasoning, Mr. Laurino's complaint was filed more than seven months after the statute of limitations had expired and was therefore time-barred.

On appeal, Mr. Laurino raises two arguments that his claims were not time-barred. He argues that he could not have brought his claim for wrongful arrest without probable cause until he had been acquitted of the underlying

offense of obstructing legal process. He also argues that the statute of limitations for § 1983 claims is four years, not two years as the district court determined.

A.

Mr. Laurino argues that his claim for arrest without probable cause did not accrue until he was acquitted, citing Heck v. Humphrey, 512 U.S. 477 (1994). Heck requires a court considering a § 1983 damage claim relating to a plaintiff's conviction to determine whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction; if so, then the plaintiff must obtain invalidation of the conviction before pursuing his action for damages. See id. at 487.

Mr. Laurino's Heck argument is foreclosed by our decision in Beck v. City of Muskogee Police Department, 195 F.3d 553 (10th Cir. 1999). There, we held that "nothing in Heck changes the general rule that causes of action relating to an allegedly illegal arrest arise at the time of arrest." Id. at 558. This is because a suspect's proof that police lacked probable cause to arrest him does not necessarily imply the invalidity or unlawfulness of his conviction for the

underlying offense.  See Brooks v. City of Winston-Salem, 85 F.3d 178, 182

(4th Cir. 1996). [3]

Mr. Laurino's challenge to his arrest does not implicate any of the elements

of his conviction for obstructing legal process.  We conclude that the accrual of

his claim for arrest without probable cause is unaffected by Heck.

B.

Mr. Laurino also argues that the district court improperly borrowed a state

statute of limitations and that a four-year federal "catch-all" statute of limitations

should instead apply to his § 1983 claims.  Section 1983 is silent concerning the

applicable statute of limitations, leading federal courts to borrow the analogous

state statute for personal injury.  Mr. Laurino cites 28 U.S.C. § 1658, however,

which reads as follows:

> Except as otherwise provided by law, a civil action arising under an
> Act of Congress enacted after the date of the enactment of this
> section [December 1, 1990] may not be commenced later than 4 years
> after the cause of action accrues.

By its terms, § 1658's four-year statute of limitations applies only to

statutes enacted after December 1, 1990.  Section 1983 was enacted prior to

---

[3] Contrary to Mr. Laurino's arguments, this case does not fall within any of the exceptions to the Beck rule, such as when a plaintiff convicted of resisting arrest challenges the underlying arrest, see Beck, 195 F.3d at 558, or where all the evidence to be presented was obtained as the result of an illegal arrest, see id. at 559 n.4.

December 1, 1990. Mr. Laurino argues, however, that an "enactment" occurs for purposes of § 1658 anytime Congress amends a statute. Section 1983 was amended on October 19, 1996, to limit injunctive relief against judicial officers. See Federal Courts Improvement Act of 1996, Pub. L. 104-317, Title III, § 309(c), 100 Stat. 3853. We must therefore determine whether this amendment made § 1983 actions subject to the four-year statute of limitations provision of § 1658.

We have found no circuit decisions addressing this specific issue. Our review of the legislative history of § 1658, however, convinces us that Mr. Laurino's position lacks merit. The House Report states that § 1658 was intended to be "applicable to legislation enacted after the effective date of this Act, which creates a cause of action but is silent as to the applicable limitations period." H.R. Rep. No. 101-734, at 24 (1990), reprinted in 1990 U.S.C.C.A.N. 6860, 6870 (emphasis added). The 1996 amendment to § 1983 did not create a cause of action, and none of Mr. Laurino's causes of action are based upon it in any way. The district court therefore appropriately applied the two-year Kansas state statute of limitations to his claims. [4]

---

[4] Mr. Laurino also raises an argument based upon Albright v. Oliver, 510 U.S. 266 (1994), that a seizure continues for § 1983 purposes until the defendant has been acquitted. He failed to show that he made this argument in the district court, and we therefore decline to consider it. See Oyler v.

(continued...)

II.

We turn to the appeal from the Rule 11 sanctions.  Appellees argue that we lack jurisdiction over this portion of the appeal.  They note that the sanctions were entered solely against appellant's attorney, Thomas C. McDowell, who failed to file a separate notice of appeal.  See, e.g., Cabrera v. City of Huntington Park, 159 F.3d 374, 382 (9th Cir. 1998) (holding that client lacks standing to appeal order imposing sanctions against his attorney).

Mr. McDowell responds that he intended the notice of appeal in this case to include his personal appeal from the order of sanctions.  The notice of appeal nowhere mentions Mr. McDowell, except for being signed by him as attorney for appellant.  See Appellant's App. at 13.  Appeals should not be dismissed, however, "for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c)(4); see also Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1385 (10th Cir. 1994).  The notice of appeal here specifically purports to appeal, among other things, from an order entered on May 18, 1999, that only concerns the sanctions entered against Mr. McDowell.  Designation of this order provides sufficient evidence, by implication, of Mr. McDowell's intention to take an appeal from the order of sanctions.  See Garcia v. Wash,

_____

4(...continued)
Allenbrand, 23 F.3d 292, 299 n.8 (10th Cir. 1994).

20 F.3d 608, 609-10 (5th Cir. 1994). We therefore proceed to consider the merits of his arguments.

Mr. McDowell raises both substantive and procedural arguments against the sanctions. We review all aspects of the district court's Rule 11 determination for abuse of discretion. See Cooter & Gell v. Hartmarx Corp. , 496 U.S. 384, 405 (1990). We conclude that none of Mr. McDowell's arguments provides a basis for reversal.

A.

In Mr. McDowell's first substantive argument, he contends that he should not have been sanctioned because he raised a nonfrivolous argument for reversal of existing law. The district court sanctioned Mr. McDowell because he "had no evidentiary support for his factual assertions that Officers McIntosh, Berry, Weinman and Hiser may have committed perjury or that such contentions were likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Appellant's App. at 75 (footnote omitted). Mr. McDowell argues that under a minority view taken by some other courts, a plaintiff who pursues a malicious prosecution action is not obligated to show that an overturned conviction in municipal court was the product of fraud, perjury or other corrupt means. Therefore, he argues, he should not have been sanctioned for failure to make such a showing.

This argument lacks merit. Mr. McDowell was not sanctioned for attempting to modify existing law. He was sanctioned for making an allegation that individual defendants in this case other than Officer Tate may have committed perjury, when he had no evidentiary support for the allegation, and he failed to show that investigation or discovery would lead to any evidence to support his allegation. See Fed. R. Civ. P. 11(b)(3). Whether he could have also established the elements of his claim without the unsubstantiated allegation is irrelevant to the district court's basis for imposing sanctions.

B.

Mr. McDowell next argues that he had a factual basis for arguing that Officer Tate committed perjury. The district court conceded this might be true, but concluded that his argument still deserved sanction because it accused the other officers of perjury without a factual basis. Mr. McDowell presents no argument in response to the district court's conclusion concerning the other officers. His argument therefore provides no basis for reversal of the district court's decision.

C.

Finally, Mr. McDowell attacks the procedural basis for the award of sanctions. The district court initially assessed sanctions sua sponte, then, upon invited motion by counsel, directed that the sanctions be paid to counsel rather

-11-

than to the court clerk. Mr. McDowell contends that neither the initial nor the amended award of sanctions can stand, because he withdrew the offending pleading before the first order of sanctions was entered and thereby complied with the "safe harbor" provisions of Rule 11.

We consider first the initial award of sanctions. Mr. McDowell argues that he implicitly brought himself within the "safe harbor" provision by failing to respond to the defendants' motion for summary judgment. We need not determine whether his nonresponse constituted a "withdraw[al]" within the meaning of Rule 11(c)(1)(A), however, because the "safe harbor" provision does not apply when a court awards sanctions on its own initiative. See Rule 11(c)(1)(B); Hutchinson v. Pfeil, 208 F.3d 1180, 1184 (10th Cir. 2000). Instead, a sua sponte award of sanctions requires the issuance of a show cause order, with reasonable opportunity to respond. See Hutchinson, 208 F.3d at 1184. As these procedural requirements were complied with in this instance, Mr. McDowell's procedural argument for reversal of the initial award of sanctions fails.

Mr. McDowell has a stronger argument for application of the "safe harbor" provision with respect to the amended judgment. [5] Defendants suggest that the

_____

[5] The district court correctly recognized that it required a motion for sanctions before awarding them to defendants. See Hutchinson, 208 F.3d at 1184. Where sanctions are ordered on motion, however, the "safe harbor" provision does apply. See Fed. R. Civ. P. 11(c)(1)(A). It is therefore questionable whether
(continued...)

-12-

"safe harbor" rule may be flexible in circumstances where sanctions have already been awarded on the court's own initiative. We need not resolve this issue, however, because we hold we lack jurisdiction over Mr. McDowell's appeal from the amended order of sanctions.

At the time the notice of appeal in this case was filed, on May 28, 1999, defendants' motion seeking to amend the judgment to award Rule 11 sanctions to them had been filed but not decided. The district court did not grant the motion until June 18, 1999, after the notice of appeal had been filed. At that time, the appeal from the award of sanctions ripened, and we gained jurisdiction over the initial award of sanctions. Mr. McDowell failed to file an amended notice of appeal from the district court's amended judgment, however. We therefore lack jurisdiction over his challenge to the amended judgment. [6] See Fed. R. App. P. 4(a)(4)(B)(ii); Breeden v. ABF Freight Sys., Inc., 115 F.3d 749, 752 (10th Cir. 1997).

---

[5](...continued) the district court could entertain defendants' motion for Rule 11 sanctions after final judgment, because at that point McDowell could no longer withdraw his pleading pursuant to the "safe harbor" provision. See Hutchinson, 208 F.3d at 1183-84.

[6] The notice of appeal purports to appeal from "any and all other subsequent amendments to or other final judgments entered in the above named case after this notice of appeal has been filed." Appellant's App. at 13. This designation was ineffective to appeal from the amended judgment. See Fed. R. App. P. 3(c)(1)(B) (requiring specific designation in notice of appeal of order appealed from).

The judgment of the United States District Court for the District of Kansas is therefore AFFIRMED.