FILED
United States Court of Appeals
Tenth Circuit

March 2, 2017

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

CLEO CLEMMONS, as administrator for
the Estate of Sheila Bowers, deceased;
BENJAMIN BOWERS, as administrator
for the Estate of Roy Bowers, deceased,

     Plaintiffs - Appellants,

v.

WELLS FARGO BANK, N.A.; SHAPIRO
& MOCK, LLC, n/k/a Shapiro &
Kreisman, LLC,

     Defendants - Appellees.

Nos. 15-3095 & 15-3169
(D.C. No. 5:14-CV-04020-JTM-TJJ)
(D. Kan.)

_____

ORDER AND JUDGMENT[*]
_____

Before **LUCERO**, **McKAY**, and **BACHARACH**, Circuit Judges.
_____

In 2010, Plaintiffs sued an electronic mortgage servicing entity employed by

Defendant Wells Fargo. Wells Fargo intervened in the action, and after nearly three

years of discovery and motions practice, the district court granted Wells Fargo's motion

for summary judgment. It also granted Wells Fargo's motion for attorney fees and

awarded Wells Fargo $289,096 in legal fees and $9,204 in costs. Even by then, in 2013,

_____

[*] These consolidated appeals were ordered submitted on the briefs on October 20, 2016.
This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiffs had "caused the present action to metastasize beyond any reason." *Bowers v. Mortg. Elec. Registration Sys., Inc.* (*Bowers I*), No. 10-4141-JTM, 2013 WL 1308237, at *4 (D. Kan. Mar. 26, 2013). We affirmed the district court's decision. *See Clemmons v. Mortg. Elec. Registration Sys., Inc.*, No. 13-3204, 2014 WL 12013437, at *6 (10th Cir. Nov. 12, 2014).

Apparently, while that appeal was pending, Plaintiffs filed a second suit in state court against Defendant Wells Fargo and its law firm, Defendant Shapiro & Mock, based on the same dispute that produced *Bowers I*. Defendants removed this case to federal court, and moved to dismiss the case based on claim preclusion, issue preclusion, and the statute of limitations. Wells Fargo also moved under Rule 11 for sanctions against Plaintiffs' attorney, Ms. Donna Huffman. The district court granted the motions to dismiss and the motion for sanctions, and it awarded Wells Fargo $5,000. Plaintiffs appealed.

At the outset, we must reiterate two points from *Clemmons*: First, "appellants must advance developed legal arguments, supported by authority, and provide record citations adequate to permit appellate review." *Id.* at *2. And second, arguments not presented to the district court may be forfeited on appeal. *Id.* To this we add: "this court is under no obligation to consider arguments not fully set forth in a party's appellate brief, including arguments incorporated by reference to prior pleadings or other materials," *United States v. Gordon*, 710 F.3d 1124, 1137 n.15 (10th Cir. 2013) (brackets omitted), and "we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *United States v. Fisher*, 805

- 2 -

F.3d 982, 991 (10th Cir. 2015). With that in mind, we turn first to Plaintiffs' contention that the district court lacked subject-matter jurisdiction over this case.

Jurisdiction is secure. A federal district court may exercise removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Wells Fargo timely removed the case to district court, asserting federal-question jurisdiction under 28 U.S.C. § 1331, supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), and complete diversity under 28 U.S.C. § 1332.

The district court proceeded under diversity jurisdiction. Diversity jurisdiction is proper if "complete diversity of citizenship exists between the parties and. . . the amount in controversy exceeds $75,000." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004). The decedents were residents of the state of Kansas, and "the legal representative of the estate of a decedent shall be deemed a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2). "For the purposes of diversity jurisdiction, Wells Fargo is a citizen of South Dakota, where its main office is located." *Gorsuch, Ltd. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1235 n.3 (10th Cir. 2014) (citing 28 U.S.C. § 1348 and *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006)).

On appeal, Plaintiffs argue that Shapiro & Mock, LLC, is a "Kansas citizen/resident as a separate legal entity pursuant to" Kansas state law, and, therefore, complete diversity is lacking. (Appellants' Op. Br. at 15.) But, as a limited liability company, Shapiro & Mock is treated like a partnership for purposes of establishing jurisdiction; its citizenship is determined by the citizenship of its members. *Lompe v.*

*Sunridge Partners, LLC*, 818 F.3d 1041, 1046–47 (10th Cir. 2016).  According to the record, Shapiro & Mock, LLC (now Shapiro & Kreisman, LLC) has two ownership or equity members:  Gerald M. Shapiro and David S. Kreisman.  "[E]ach have residences in the States of Illinois and Florida.  Neither Mr. Shapiro nor Mr. Kreisman reside in Kansas."  (App. Vol. I at 20.)  Linda Mock, a non-ownership, non-equity member of Shapiro & Mock, is a Missouri resident.  Based on this uncontroverted information, we conclude the district court properly exercised jurisdiction over this matter under 28 U.S.C. § 1332, and we have jurisdiction over this appeal under 28 U.S.C. § 1291.[1]

We turn next to the merits of the case, which we review de novo.  The district court held that Plaintiffs' claims were barred by claim preclusion and the statute of limitations.  In deciding "the claim-preclusive effect of a federal diversity judgment," we generally "adopt the law that would be applied by state courts in the State in which the federal diversity court sits."  *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1147 (10th Cir. 2007).  Both *Bowers I* and the present case were decided by the federal district court in Kansas sitting in diversity.  So, we apply Kansas law.

---

[1] Even if the parties were not completely diverse, the district court still would have had jurisdiction.  In their complaint, Plaintiffs asserted claims under federal statutes, which fall squarely within federal-question jurisdiction under 28 U.S.C. § 1331.  "Once a district court has jurisdiction, additional claims . . .  can be added under the supplemental-jurisdiction statute, 28 U.S.C. § 1367(a), which grants the district courts jurisdiction 'over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'"  *Price v. Wolford*, 608 F.3d 698, 702–03 (10th Cir. 2010).  "A claim is part of the same case or controversy if it derives from a common nucleus of operative fact."  *Id.*  (internal quotation marks and brackets omitted).  Here, Plaintiffs' state-law claims arise out of the same nucleus of operative facts.  Accordingly, the district court would have had supplemental jurisdiction over the state-law claims.

Claim preclusion, sometimes referred to as res judicata, "prohibits a party from asserting in a second lawsuit any matter that might have been asserted in the first lawsuit." *Winkel v. Miller*, 205 P.3d 688, 697 (Kan. 2009). It "requires that all the grounds or theories upon which a cause of action or claim is founded be asserted in one action or they will be barred in any subsequent action." *Shelton v. DeWitte*, 26 P.3d 650, 654 (Kan. 2001) (quoting *Parsons Mobile Prods., Inc. v. Remmert*, 531 P.2d 435, 437 (Kan. 1975)). In Kansas, claim preclusion requires (a) the same claim or cause of action; (b) the same parties; (c) claims that were or could have been raised; and (d) a final judgment on the merits. *Cain v. Jacox*, 354 P.3d 1196, 1199 (Kan. 2015).

On appeal, Plaintiffs seem to contest the first, second, and third elements. First, Plaintiffs contend that the "claims filed in this case were not barred by the doctrine of res judicata" because "they were not decided in [*Bowers I*]." (Appellants' Op. Br. at 23.) Beyond this conclusory statement, Plaintiffs' argument is hard to follow. They seem to take issue with the district court referring to the present case as "virtually a carbon copy of their original action." (Memorandum and Order at 2.) This was an error, Plaintiffs contend, because the present complaint has "no reference to MERS"—a defendant in the first action—"in the eleven counts." (Appellants' Op. Br. at 25.) Plaintiffs go on to argue that several counts in the present complaint contain "averments" that were not previously litigated. But Plaintiffs fail to appreciate that the two complaints need not be identical for claim preclusion to apply: "The rule is binding, not only as to every question actually presented, considered and decided, but also to every question which

- 5 -

might have been presented and decided." *In re Estate of Reed*, 693 P.2d 1156, 1160 (Kan. 1985).

Next, Plaintiffs argue that the present claims could not have been brought against Wells Fargo in *Bowers I* because the district court would have been jurisdictionally barred by 28 U.S.C. § 1367(b) from hearing them. This makes no sense. In *Bowers I*, Wells Fargo "successfully moved to intervene pursuant to Fed. R. Civ. P. 24(a)(2) and (b)(1)(B)" as a defendant on all claims and as a counterclaimant. *Clemmons*, 2014 WL 12013437, at *2. We explained that "[a]lthough 28 U.S.C. § 1367(b), cited by Plaintiffs, generally bars an intervening party from asserting claims through supplemental jurisdiction in a diversity action, this bar does not apply to claims which independently satisfy the requirements of original diversity jurisdiction. Here, all parties are citizens of different states, and Wells Fargo's claims for reinstatement and foreclosure placed more than $75,000 in controversy." *Id.* at *3. With diversity jurisdiction having been established, there was nothing preventing Plaintiffs from raising counterclaims against Wells Fargo.

Plaintiffs next contend that "[t]he claims under the Kansas Consumer Act" "were not nor could they have been litigated in [*Bowers I*]" because these claims had been dismissed "due to the erroneous conclusion of law that [the Act] did not apply to consumer transactions." (Appellants' Op. Br. at 29, 33.) Even if the district court in *Bowers I* had made an erroneous conclusion of law, this argument would still be meritless: claim preclusion "as applied is inexorable in making a judgment binding so as to shut off further inquiry no matter how clear the mistake of fact *or how obvious the*

*misunderstanding of law.*"  *Subway Restaurants, Inc. v. Kessler*, 46 P.3d 1113, 1117

(Kan. 2002) (internal quotation marks omitted) (emphasis added).

Plaintiffs also contest whether claim preclusion should apply to Shapiro & Mock,

which was not a party to *Bowers I*, but which represented Wells Fargo during the events

of *Bowers I*.  The district court held that Shapiro & Mock satisfied the "same party"

element of claim preclusion because it was in privity with its client.  On appeal, Plaintiffs

claim the district court ignored that Shapiro & Mock was acting "in the specific capacity

as debt collectors on mortgage foreclosures, . . . .  in favor of analysis of privity."

(Appellants' Op. Br. at 20–21.)  Plaintiffs do not cite to any Kansas state authority on this

point.  Plaintiffs then seem to shift to factual allegations against the law firm.  This is one

place where Plaintiffs' brief is so woefully inadequate that we decline to consider the

argument.  *See Fisher*, 805 F.3d at 991.

The district court held that even if res judicata did not apply, all of Plaintiffs'

claims would be time-barred.  On appeal, Plaintiffs make no arguments as to whether

their federal claims against Wells Fargo are time-barred.  Instead, Plaintiffs maintain that

their state-law claims were preserved under the Kansas savings statute, K.S.A. 60–518,

which provides in relevant part:  "If any action be commenced within due time, and the

plaintiff fail in such action otherwise than upon the merits, and the time limited for the

same shall have expired, the plaintiff, or, if the plaintiff die, and the cause of action

survive, his or her representatives may commence a new action within six (6) months

after such failure."

But the savings statute comes into play only when a prior "action" was "commenced within due time." On appeal, Plaintiffs say that "[t]he district court never addressed the savings clause or statute in dismissing the claims." (Appellants' Op. Br. at 40.) This is a baffling assertion. As the district court clearly explained:

> The Kansas savings statute, K.S.A. 60-518, only applies when an earlier action was "commenced within due time" but then dismissed without prejudice. The statute is inapplicable here, because plaintiffs never "commenced" any state court case. Rather, Wells Fargo initiated a state foreclosure action, which it dismissed after intervening in *Bowers I*. The plaintiffs filed an answer and various counterclaims in that state action after the case was dismissed. The Kansas Court of Appeals held that the plaintiffs' pleadings were not properly filed after the action had been properly dismissed. *Wells Fargo Bank, N.A. v. Bowers*, 303 P.3d 727, 2013 WL 3792885, at *6 (Kan. App. July 19, 2013). The Kansas Supreme Court rejected the Bowers' Petition for Review. The plaintiffs' claims in the state action were not "commenced within due time" because they were never really "commenced" at all.

(Memorandum and Order at 9 (emphasis omitted).) We agree with the district court.

Plaintiffs also argue that their claim against Shapiro & Mock began to accrue in December 2010. The district court held that the "'Fair Debt' demand letter which underlies the plaintiffs' claim against the firm was sent on October 14, 2010. The present action was not filed until December 12, 2013, over three years later." (Memorandum and Order at 8.) "Accordingly," the district court concluded, "the plaintiffs['] claims against the law firm are precluded by the three-year statu[t]e of limitations contained in the KCPA." (*Id.*) The district court then provided an alternative reason for dismissing this specific claim: "Even in the absence of the time bar, this court, in its prior Orders in *Bowers I*, determined that Wells Fargo had a valid and enforceable lien interest, and Shapiro & Mock's actions in seeking to enforce that interest are not actionable, since they

worked no injury to the plaintiffs." (*Id.*) We need not address this alternative reason because we agree with the district court that any such claim against Shapiro & Mock would have begun to accrue when the Bowers received the first letter from the firm in October 2010.

Turning to the sanctions, we address first whether Plaintiffs lack standing to appeal the sanctions. "[W]here sanctions have been imposed against counsel rather than a party, counsel are the proper parties to an appeal contesting those sanctions." *Jane L. v. Bangerter*, 61 F.3d 1505, 1513 n.3 (10th Cir. 1995). It is true, as Defendants point out, that Ms. Huffman does not list herself as a party in the Amended Notice of Appeal. It is also true that Ms. Huffman states, explicitly, in the Amended Certificate of Interested Parties that she is not a "direct part[y]." And "[t]here is no doubt but that the better practice is for an attorney who wishes to challenge a sanctions order directed at him or her to file a separate notice of appeal." *In re Plaza-Martinez*, 747 F.3d 10, 12 (1st Cir. 2014) (citing 16A Charles A. Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 3949.4 (4th ed. 2013)). But "[a]n appeal must not be dismissed . . . for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c)(4); *see also Laurino v. Tate*, 220 F.3d 1213, 1218 (10th Cir. 2000). In *Laurino*, like here, the sanctioned attorney was nowhere mentioned in the notice of appeal. But, like here, "[t]he notice of appeal . . . specifically purports to appeal, among other things, from an order. . . that only concerns the sanctions entered against [the attorney]." *See Laurino*, 220 F.3d at 1218 (emphasis omitted). And so we held in *Laurino* that "[d]esignation of this order provides sufficient evidence, by implication, of

[the attorney's] intention to take an appeal from the order of sanctions." *Id.* Here it is clear from the notice of appeal that Ms. Huffman intended to appeal the sanctions order; thus, despite the errors in the notice of appeal and certificate of interested parties, we have jurisdiction over this part of the appeal.

We review a Rule 11 sanction for abuse of discretion. *See Roth v. Green*, 466 F.3d 1179, 1187 (10th Cir. 2006). The district court applied the correct standard in its review of Ms. Huffman's conduct: "Under Rule 11, the person who signs a pleading, motion, or other paper filed with the court, certifies that he or she has conducted a reasonable inquiry into the factual and legal basis for the filing, and that the substance of the filing is well-grounded in fact and law." *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992). "A good faith belief in the merit of an argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances." *White v. Gen. Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990).

On appeal, Ms. Huffman argues that bringing a second suit was "objectively justified." (Appellants' Op. Br. at 42.) She recognizes that "[c]ourts have repeatedly held Rule 11 is violated when a party, without justification, attempts to resurrect previously-dismissed litigation." (*Id.*) But, she says, "objective arguments were repeatedly made [by her] against res judicata as a finding." (*Id.* at 45.) We have addressed those "objective arguments," which are meritless, above.

Under the heading of "Wrong Standard," Ms. Huffman also argues that "[t]he motion failed to put Counsel on notice and failed to meet the moving parties['] burden."

(*Id.* at 45.) Her contention here seems to be that Wells Fargo "fail[ed] to actually bring a prima facia motion" and that Wells Fargo did not "analyze the text of Rule 11 or point to any specific violation." (*Id.*) Ms. Huffman does not cite to the record, present any supporting caselaw, or explain how Wells Fargo failed to give adequate notice. What's more, this argument is plainly unsupported by the record. Wells Fargo presented Ms. Huffman with a more-than-adequate Rule 11 motion and a warning letter, and gave Ms. Huffman sufficient time to withdraw the complaint before filing the motion with the district court.

Next, Ms. Huffman argues that Wells Fargo had an improper motive for filing the Rule 11 motion. But, again, Ms. Huffman does not cite to the record or to any caselaw that would suggest the motive behind filing a Rule 11 motion matters. Furthermore, what Ms. Huffman speculates is Wells Fargo's motive—to "avoid[ ] future litigation" (*id.* at 48)—is not improper. "Deterrence is . . . the primary goal of the sanctions." *White*, 908 F.2d at 683.

Next, Ms. Huffman argues that "the recitation of facts in the sanctions memorandum is erroneous." (Appellants' Op. Br. at 49.) The first purported "error of fact" is the claim preclusion issue. The second "erroneous finding" is the statute of limitations issue. The remaining alleged "errors of fact" are either irrelevant, immaterial, not findings of fact, or not erroneous.

Back in the original *Bowers I* litigation, the district court "specifically admonished that any future attempts to relitigate issues already decided will likely result in the exercise of the court's inherent power to prevent such a waste of resources." *Bowers v.*

- 11 -

*Mortg. Elec. Registration Sys.*, No. 10-4141-JTM, 2012 WL 688810, at *2 (D. Kan. Mar. 1, 2012). "Rather than taking these repeated admonitions to heart, counsel instituted *Bowers II*, and has never presented any colorable rationale why the principle of res judicata would not apply." (Memorandum and Order at 11.) The district court here concluded that "the filing of *Bowers II* was not objectively reasonable." (*Id.*) We agree.

"Plaintiffs' remaining arguments not specifically addressed above are either waived or without merit." *Clemmons*, 2014 WL 12013437, at *6.

The district court's judgment is **AFFIRMED**. For the reasons stated above, Wells Fargo's motion to dismiss appeal is **DENIED**. Appellants are relieved from paying the filing fee for appeal no. 15-3169.

Entered for the Court

Monroe G. McKay
Circuit Judge